OPINION OF THE COURT
Arnold Guy Fraiman, J.
This is an application by petitioner for a judgment pursuant to CPLR article 78 annulling the amended determination of respondent Department of General Services of the City of New York (the City) which approved a rate increase for duct rentals charged by respondent Empire City Subway Company (Limited) (Empire) effective January 1, 1976.
Teleprompter Corporation, the petitioner, owns a cable television system in northern Manhattan. Empire owns and operates duct for communication conductors under the streets of Manhattan and The Bronx pursuant to an 1891 agreement with the City. Empire is a wholly owned subsidiary of the New York Telephone Company (Telephone). In order to provide cable television to its subscribers, Teleprompter rents duct space from Empire for its cables. Empire’s agreement with the City provides that rents for duct space shall be at the same rates for all occupants, and that the rentals charged are subject to the City’s "control, modification and revision.” In December, 1975 Empire advised the City that it intended to increase its duct rents effective January 1, 1976. Teleprompter objected to the increases for the reasons hereinafter described, but on December 10, 1976, the City approved the requested increases. Thereafter, Teleprompter commenced a CPLR article 78 proceeding to annul the City’s approval which resulted in the matter being remanded to the City with directions that it prepare and submit a full decision setting forth its findings and reasons. On December 29, 1977 the City issued an amended determination complying with the order of the court but adhering to its original decision approving the rate increase which Empire had placed in effect on January 1, 1976.
By the instant proceeding, Teleprompter seeks to annul the amended determination on the ground that it is arbitrary, capricious and contrary to law. The substance of Teleprompter’s objection to the increase is that it ignores the allegedly nonarm’s length relationship between Empire and its parent, Telephone, which is also the major lessee of duct space from Empire. The rate increase by the City was calculated to give Empire a return of 9.24% on its invested capital rate base. *1018 While Teleprompter does not question the propriety of this rate of return, it objects to the inclusion in Empire’s capital rate base of the cost of construction of 3,201 miles of unoccupied, unrented duct which were virtually all built at the request of Telephone in anticipation of its future needs. Empire has 7,625 duct miles which are rented. Of these, Telephone rents 7,348 miles and the remaining 277 miles are rented to Teleprompter and five other tenants. Teleprompter contends that it is, in effect, subsidizing Telephone, Empire’s parent, as a result of the inclusion in the rate base upon which its rentals are determined of the cost of duct constructed for the possible future needs of Telephone. This, it argues, is inequitable because Telephone benefits from having duct available for its future needs at today’s lower construction costs without absorbing the full costs of such construction, a benefit it would not enjoy, according to Teleprompter, if Empire were not Telephone’s subsidiary.
The inclusion in Empire’s rate base of the construction costs of unoccupied duct available for future use, almost all of which was built at the request of Telephone, is the result of a calculated plan by Empire which was designed to reduce construction costs and minimize the disruptive aspects of subsurface construction. Essence of the plan is to require all tenants to provide Empire with their estimated future duct requirements for a 30-year period at the time that the construction of any new conduit is contemplated for any tenant. Empire then builds the necessary conduits for the tenants’ long-term requirements. Under chapter 263 of the Laws of 1892 (Administrative Code of City of New York, § 734(5)-13.0, subd b), a tenant applying for duct construction must agree to pay rentals for a minimum of five years. In 1893, the City determined that the specified period would be the five-year minimum. (This was increased to 10 years, effective January 1, 1977, by the amended determination herein. However, inasmuch as this change operates prospectively only, it does not affect the rate increase to which Teleprompter objects.) Thus, with respect to the construction of duct for a tenant’s future needs, the tenant must pay rental for five years for such duct upon completion of its construction even though he does not occupy it. Pursuant to the 1891 agreement, this unoccupied duct is available for use by any tenant wishing to rent it. Despite this fact, and although Teleprompter does not question the soundness of Empire’s policy of encouraging the construction of spare duct for future needs, it nevertheless *1019 contends that the cost of its construction, almost all of which was requested by Telephone, should either be absorbed by Empire or (and this would have the identical effect), that there should be included in Empire’s calculation of its rate base, pro forma, revenues that would have been paid by Telephone if all duct built for it were actually rented.
The adoption of either formula would unfairly deprive Empire of a reasonable return on its investment. Nor is it inequitable to spread the cost of unoccupied duct proportionately among all tenants, in view of its being equally accessible to all. Further, for Empire to require a tenant requesting duct for future occupancy to pay rentals on unoccupied duct until the costs thereof were recouped would be self-defeating in that it would effectively discourage such requests. Rather than paying the full costs of duct required for the future, a tenant would obviously request construction only of the duct for which it had an immediate use. The effect thereof would be to greatly increase the frequency and number of street openings for laying new duct, and thus would frustrate Empire’s concededly rational policy of minimizing construction costs and disruptive subsurface excavation.
Moreover, although it disclaims any interest in duct constructed for Telephone’s future needs, Teleprompter itself has been a direct beneficiary of the inclusion by Empire of the unrecouped cost of such unrented duct in its rate base. More than 96% of the 232,110 feet of duct occupied by Teleprompter was constructed at the request of other tenants who had ordered the duct in anticipation of future needs and had paid the five-year guaranteed rental. As a result, Teleprompter had access to duct which had an average investment cost of less than one-third the prevailing cost of construction at the time Teleprompter requested the duct. Further, it was able to place its cables immediately, without waiting for the required duct to be constructed.
On the basis of all of the foregoing, the court concludes that the amended determination of the City which found Empire’s construction policies described herein to be reasonable, and which approved its method of calculating its rate base, was neither arbitrary nor capricious. The court further finds that the inclusion of the unrecouped costs of unoccupied duct in Empire’s rate base is not the result of a less than arm’s length relationship between Empire and Telephone. Accordingly, the petition is dismissed.